**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION AT DAYTON**

| | | |
|---|---|---|
| BOBBIE J. SRODE, | : | |
| Plaintiff, | : | |
| | | Case No. 3:07CV0254 |
| vs. | : | |
| | | District Judge Walter H. Rice |
| MICHAEL J. ASTRUE, | : | Magistrate Judge Sharon L. Ovington |
| Commissioner of the Social | | |
| Security Administration, | : | |
| Defendant. | : | |

**REPORT AND RECOMMENDATIONS**[1]

**I. INTRODUCTION**

Plaintiff Bobbie J. Srode medically retired from the Wright Patterson Air Force Base library in December 1996 due to difficulty breathing. (Doc. # 6 at 4; *see* Tr. 299). She suffers from a number of health problems, including environmental induced asthma, chronic fatigue, and depression/anxiety. (Tr. 893).

On May 16, 1996, Plaintiff initially sought financial assistance from the Social Security Administration by applying for Disability Insurance Benefits (DIB). (Tr. 177-81). She claimed a disability onset date of March 20, 1996. (*Id.*). Plaintiff's initial application was denied. Plaintiff filed a subsequent application on December 9, 2006,

---

[1] Attached hereto is NOTICE to the parties regarding objections to this Report and Recommendations.

1

alleging an onset date of December 7, 1996. (Tr. 182-85). That application also was denied. Plaintiff filed her current DIB application on September 22, 1999, alleging disability as of December 8, 1996. (Tr. 186).

On March 15, 2000, the Administration found Plaintiff disabled as of September 1, 1999. (Tr. 154, 169-70). Plaintiff requested reconsideration, asserting that she had been disabled since December 8, 1996. (Tr. 171). On reconsideration, the Administration found that Plaintiff's disability did not begin until September 1999. (Tr. 172).

A hearing was held May 2, 2001, before Administrative Law Judge (ALJ) Melvin A. Padilla. (Tr. 54-92). ALJ Padilla issued a written decision concluding that Plaintiff was not under a "disability" within the meaning of the Social Security Act. (Tr. 611-625). The Appeals Council granted her request for review (Tr. 636-37), vacated the hearing decision and remanded the case to the Office of Hearings and Appeals for further evaluation of the reported chronic fatigue syndrome. (Tr. 27, 636).

A supplemental hearing was held January 27, 2005. (Tr. 103-50). ALJ Padilla again denied Plaintiff's DIB application, concluding that her impairments did not constitute a "disability" within the meaning of the Social Security Act. (Tr. 27-43). The Appeals Council adopted a portion of ALJ Padilla's findings and conclusions, the exceptions being his findings that Plaintiff is capable of performing a range of light work and that she last met the special insured status for disability on September 30, 2003. (Tr. 18). Instead, the Appeals Council found that as of the date Plaintiff last met the insured status for DIB, she had the residual functional capacity for a range of sedentary work (Tr.

18), and that her last date insured for DIB was December 31, 2003. (Tr. 18). The ALJ's decision in conjunction with the Appeals Council's decision is subject to judicial review, *see* 42 U.S.C. §405(g), which Plaintiff now is due.

This case is before the Court upon Plaintiff's Statement of Specific Errors (Doc. #6), the Commissioner's Memorandum in Opposition (Doc. #8), Plaintiff's Reply (Doc. #10), the administrative record, and the record as a whole.

Plaintiff seeks a reversal of the ALJ and Appeals Council's decision and a remand to the Social Security Administration for payment of DIB. The Commissioner seeks an Order affirming the ALJ's decision.

## II.    FACTUAL BACKGROUND

Plaintiff's age on the date her claimed disability began placed her in the category of a "younger person" within the meaning of the Commissioner's Regulations. *See* 20 C.F.R. §404.1563. She has a high school education and a bachelor's degree in Fine Art and Education. (Tr. 28). Plaintiff has significant work experience as an instructor and a manager in the crafts field, as an assistant director of an arts & crafts program, youth program and skills development program, and as a technical information specialist at WPAFB library. (*See* Doc. #6 at 3 and Tr. 108, 299).

Plaintiff testified during the ALJ's hearing that she has experienced a lot of pain in the muscles and joints of her low back, and in her hip and shoulders. (Tr. 116). She testified that she has undergone several x-rays and CT scans and that those studies show degenerative changes in her discs. (Tr. 118).

Plaintiff further testified that her medications consist of Ibuprofen and a Proventil inhaler. (Tr. 126). She stated that taking too much Proventil "makes me real jittery." (*Id.*).

Plaintiff alleged that her memory became "very bad" before she left work, beginning in 1992. (Tr. 132). She testified that she has a hard time even trying to figure out what to concentrate on. (*Id.*). Plaintiff alleged that she has no stamina at all, with virtually no ability to do anything. (*Id.*).

Plaintiff's typical daily activities include heating up tv dinners, using paper plates. She does run a vacuum cleaner. At the time of the hearing, she was living in only three rooms of her house. (Tr. 127). Her ex-husband helps her do laundry at the laundromat. She watches television. (*Id.*). She does not attend church but corresponds with a church in Oklahoma. (Tr. 128). She sleeps two to three hours during the day and seven to eight hours each night.

Plaintiff testified that she can lift 5 to 10 pounds, but not all the time. (Tr. 123). She can sit 15-30 minutes at a time, and on a good day can stand 10 minutes at a time. Plaintiff further testified that she can get dressed, brush her hair, snap her pants and zip a jacket. She believes that she still could tie her shoes, but generally "kicks on shoes." (*Id.*).

The parties have provided detailed and informative descriptions of Plaintiff's medical records supported with many specific citations to evidence of record (*see* Doc. #6 at 4-9; Doc. #8 at 6-10, and the administrative record), obviating the need to reiterate that

evidence.  A few highlights of the medical evidence specifically referenced in the parties' memoranda, however, will help frame further review.

Plaintiff relies on the opinion of Gail Howell, M.D., who treated Plaintiff from 1991 to 1996.  On June 18, 1996, Dr. Howell wrote a lengthy letter to Plaintiff's employer at Wright Patterson Air Force Base, outlining Plaintiff's history of obstructive lung disease and chronic fatigue syndrome ["CFS"].  (Tr. 512-22).  Dr. Howell stated that Plaintiff's obstructive lung disease at that time was "stable," and that her last exam had revealed normal lung sounds with no audible wheezing.  (Tr. 519).  She opined that Plaintiff's obstructive lung disease resulted from environmental exposure in the work place and a history of smoking.  (Tr. 520 at #4).  Dr. Howell stated, however, that absent smoking and further exposure to particulate matter, Plaintiff "would be expected to make some recovery."  (*Id.* at #5).

As to Plaintiff's CFS, Dr. Howell noted that the condition was likely to wax and wane relative to a number of factors, including stress, long work hours or other exertion at work or at home.  (*Id*. at #5).  Despite "unpredictable ups and downs" associated with CFS, Dr. Howell noted that individuals with that diagnosis "generally . . . [are] advised to maintain routine activity such as work and [to] do some mild regular physical activity but to avoid over extending." (Tr. 521).  In light of both ailments, Dr. Howell recommended that Plaintiff maintain a 40 hour work week and not be exposed to irritants in the environment.  (*Id*.).

Three years later, in 1999, Plaintiff began treating with Dr. Timothy R. O'Donnell

5

as her primary care physician. (*See* Tr. 893). In 2002, Dr. O'Donnell conducted a physical assessment of Plaintiff and opined that she could work only "0-1" hours per day (Tr. 778), with numerous restrictions. (Tr. 778-79). On November 3, 2005, Dr. O'Donnell issued a written opinion that Plaintiff's asthma, chronic fatigue and depression/anxiety symptoms had persisted over the years, that she continued to suffer from those ailments, and that she "currently is not able to perform the duties of a full time job." (*Id.*).

Plaintiff also relies on the opinion of Dr. Mark E. Reynolds, a psychiatrist she began to see in 2001. (*See* Tr. 703-04). In a letter dated May 15, 2004 (Tr. 789-91), Dr. Reynolds remarked that Plaintiff's apparent "Organic Mood Disorder and Cognitive Disorder not otherwise specified" were "essentially unchanged" from her earlier evaluations, and that she appeared to be "globally and permanently disabled based upon the wide array of symptoms that she described." (Tr. 790-91). He further commented that "the breadth of her symptoms are not consistent with the degree of the affective condition present," and that "it does not explain the significant cognitive complaints evidenced by the patient." (Tr. 791).

In his 2007 reports, Dr. Reynolds elaborated on Plaintiff's symptoms, stating that Plaintiff's "symptoms of fatigue and cognitive dysfunction" were "distinct and separate from her mood disorder," and that her original disability as a result of the cognitive disorder "was subsequently exacerbated by the development of the mood disorder." (Tr. 943). He continued to opine that Plaintiff was disabled. (*See* Tr. 943-44).

6

The Commissioner relies on the opinion of the ALJ's designated medical expert, Dr. Emily Giesel, an internal medicine and rheumatology specialist. (Tr. 135). Dr. Giesel noted that Plaintiff's CFS diagnosis dates back to 1992, and that in recent years, Plaintiff has developed symptoms consistent with fibromyalgia. (Tr. 136). Dr. Giesel observed that Plaintiff also has been diagnosed with depression, which complicates the CFS picture. (*Id.*). Dr. Giesel testified, however, that she "would not quibble with" the chronic fatigue or fibromyalgia diagnoses, and that many CFS patients have depression. (Tr. 136-37). She agreed that Plaintiff's symptoms fit the diagnostic criteria for CFS. (Tr. 136-37).

Dr. Giesel also reported a diagnosis of asthma "in the setting of being a smoker." (Tr. 137). She noted that a series of pulmonary function tests consistently showed a mild obstructive pattern consistent with asthma. (Tr. 137). Dr. Giesel also noted that Plaintiff had seen a neurologist for migraine headaches, but that no one had prescribed anything stronger than Ibuprofen. (Tr. 138). She testified that Plaintiff's various problems did not meet or equal the requirements for any listed impairment. (Tr. 138).

Due to Plaintiff's asthma, Dr. Giesel recommended that she work only in clean air environments where she would not be exposed to dust, fumes or gases, or to extremes of heat, cold and humidity. (Tr. 139). Dr. Giesel further recommended that Plaintiff be limited to sedentary work because patients with CFS and fibromyalgia often show signs of de-conditioning that would make performing light or medium work over a 40 hour week difficult. (Tr. 139).

### III. ADMINISTRATIVE REVIEW

#### A. **"Disability" Defined and The ALJ's Sequential Evaluation**

The term "disability" as defined by the Social Security Act carries a specialized meaning of limited scope. Narrowed to its statutory meaning, a "disability" includes only physical or mental impairments that are "medically determinable" and severe enough to prevent the claimant (1) from performing his or her past job, and (2) from engaging in "substantial gainful activity" that is available in the regional or national economies.[2] *See Bowen v. City of New York*, 476 U.S. 467, 469-70 (1986).

Social Security Regulations require ALJs to resolve a disability claim through a five-step sequential evaluation of the evidence. *See* 20 C.F.R. § 404.1520(a)(4). Although a dispositive finding at any step terminates the ALJ's review, *see Colvin v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007), if fully considered, the sequential review considers and answers five questions:

1. Is the claimant engaged in substantial gainful activity?

2. Does the claimant suffer from one or more severe impairments?

3. Do the claimant's severe impairments, alone or in combination, meet or equal the criteria of an impairment set forth in the Commissioner's Listing of Impairments, 20 C.F.R. Subpart P, Appendix 1?

4. Considering the claimant's residual functional capacity, can the claimant perform his or her past relevant work?

---

[2] Impairments also either must be expected to cause death or last twelve months or longer. *See* 42 U.S.C. § 423(d)(1)(A); *see also Bowen*, 476 U.S. at 469-70.

     5.     Considering the claimant's age, education, past work experience, and residual functional capacity, can the claimant perform other work available in the national economy?

*See* 20 C.F.R. § 404.1520(a)(4); *see also Colvin*, 475 F.3d at 730; *Foster v. Halter*, 279 F.3d 348, 354 (6th Cir. 2001).

### B. The ALJ's Decision

At Step 1 of the sequential evaluation, the ALJ found "no evidence that [Plaintiff] has engaged in substantial gainful activity since her alleged disability onset date." (Tr. 29). He concluded at Step 2 that she has severe impairments "of mild chronic obstructive pulmonary disease (COPD) due to smoking, diagnoses of fibromyalgia/chronic fatigue syndrome (CFS) without meeting all diagnostic criteria, and depression." (Tr. 37).

The ALJ found at Step 3 that Plaintiff does not have an impairment or combination of impairments that meet or equal the requirements of a listed impairment. (Tr. 38). At Step 4, he found that Plaintiff "retains the residual functional capacity for a limited range of light work[,][3] featuring" the following:

> 1) lifting no more than ten pounds; 2) alternating positions at will (at least every thirty minutes); 3) a clean environment with inside work in a temperature controlled environment; 4) low stress jobs with no dealing with the public, no fast pace, and no production quotas; and 5) no extended periods of concentration on a single task.

(Tr. 38). Using this assessment, the ALJ found that Plaintiff could not perform her past

---

[3] The Regulations define light work as involving the ability to lift "no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds . . . " 20 C.F.R. § 404.1567(b).

9

relevant work as an art model, library assistant or arts and craft director. (Tr. 40). The ALJ's findings throughout his sequential evaluation led him to conclude that Plaintiff was not under a disability "at any time from her alleged disability onset date through . . . the last date that she had disability insured status," and hence was not eligible for DIB. (Tr. 41).

## IV.  JUDICIAL REVIEW

Judicial review determines whether substantial evidence in the administrative record supports the ALJ's factual findings. *Bowen v. Comm'r. of Soc. Sec.*, 478 F.3d 742, 745-46 (6th Cir. 2007). "Substantial evidence is defined as 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Id.* at 746 (citing in part *Richardson v. Perales*, 402 U.S. 389, 401 (1977)). It consists of "more than a scintilla of evidence but less than a preponderance . . ." *Rogers v. Comm'r. of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007).

Judicial review for substantial evidence is deferential, not *de novo*. *See Cruse v. Comm'r of Soc. Sec.*, 502 F.3d 532, 540 (6th Cir. 2007); *see also Cutlip v. Sec'y of Health & Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994). An ALJ's factual findings must be upheld "as long as they are supported by substantial evidence." *Rogers*, 486 F.3d at 241 (citing *Her v. Comm'r. of Soc. Sec.*, 203 F.3d 388, 389-90 (6th Cir. 1999)). Once substantial supporting evidence is found in the administrative record, courts do not consider whether they agree or disagree with the ALJ's findings or whether the administrative record contains contrary evidence. *Rogers*, 486 F.3d at 241;

*see Her*, 203 F.3d at 389-90.

Still, substantial evidence is not the analytical ending point. Judicial review further considers whether the ALJ "applied the correct legal criteria." *Bowen*, 478 F.3d at 746. If the ALJ does not, the decision may not be upheld even if the findings are supported by substantial evidence. *See id*. For example, a decision will not be upheld where the ALJ failed to apply mandatory procedural rules and legal criteria established by the Commissioner's Regulations and where that failure prejudices a claimant on the merits or deprives the claimant of a substantial right. *See id*. (and cases cited therein).

## V.     DISCUSSION

### A.     The Parties' Contentions

Plaintiff's Statement of Errors raises four alleged errors by the ALJ. (Doc. #6). First, she asserts that the ALJ failed to consider the appropriate policy ruling applicable to chronic fatigue syndrome. (*Id.* at 10-14). She next contends that the ALJ failed to evaluate the treating physicians' opinions subject to the applicable regulations. (*Id.* at 14-17). Her reply memorandum urges that such opinions should have been given "controlling or deferential weight" (Doc. #10 at 2-4), and that the ALJ should have found that she had a cognitive disorder which constituted a severe impairment. (*Id.* at 5-9). She also argues that the ALJ failed to give appropriate weight to Plaintiff's subjective pain complaints. (Doc. #6 at 17-18). Finally, Plaintiff urges that the ALJ failed to follow appropriate regulatory guidelines in assessing Plaintiff's credibility and in weighing treating source evidence. (*Id.* at 18-20). Plaintiff thus asks the Court to reverse the ALJ's

non-disability decision and to award benefits. (*Id.* at 21).

In opposing Plaintiff's contentions, the Commissioner urges that the ALJ's decision should be affirmed. (Doc. #8). Observing that the question as to Plaintiff's CFS "is not one of diagnosis, but one of severity" (*id.* at 10), the Commissioner asserts that the Social Security ruling acknowledging that CFS can be disabling does not overcome substantial evidence suggesting that Plaintiff is able to perform sedentary work. (*Id.* at 10-12). He also urges that the ALJ properly assessed the treating physicians' opinions in light of the record as a whole (*id.* at 13-15), and correctly concluded that Plaintiff's subjective complaints of disabling pain were not supported by objective evidence. (*Id.* at 15-17). Finally, the Commissioner contends that the ALJ properly considered and rejected evidence which might be considered contrary to his conclusions.

### B.  Medical Source Opinions

Social Security Regulations require ALJs to evaluate every medical opinion of record regardless of its source. *See* 20 C.F.R. § 404.1527(d). The required evaluation first focuses on treating physicians or psychologists, whose opinions are entitled to controlling weight under the treating physician rule as long as they are (1) well supported by medically acceptable data and (2) not inconsistent with other substantial evidence of record. 20 C.F.R. § 404.1527(d)(2); *see Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 544 (6th Cir. 2004). When these requirements are not met, the treating physician rule does not apply. *Id.*

Once the ALJ has concluded that the treating physician rule does not apply to a

particular treating source's opinion, the evaluation has only just begun. The ALJ must continue to evaluate the treating source's opinion by considering the following additional factors:

1. The length of the treatment relationship, the frequency of examination, and the nature and extent of the treatment relationship;

2. The 'supportability' of the opinion – whether it is supported with relevant evidence and whether it is well explained;

3. The consistency of the opinion with the record as a whole;

4. The specialization, if any, of the treating source; and

5. 'Other factors' brought to the ALJ's attention, including, for example, the treating source's knowledge of the SSI or DIB programs and its evidentiary requirements.

20 C.F.R. § 404.1527(d)(2)-(6); *see Wilson*, 378 F.3d at 544.

As to non-treating medical sources – such as one-time examiners or medical experts who testify during the administrative hearing – ALJs must evaluate their opinions under the same factors applicable to treating medical sources, *i.e.,* supportability, consistency, specialization, etc. *See* 20 C.F.R. § 404.1527(d), (f). The Regulations appear to emphasize this requirement by reiterating it no fewer than three times. *See* 20 C.F.R. § 404.1527(d) ("we consider all of the following factors in deciding the weight to give any medical opinion . . ."); *see* also 20 C.F.R. § 404.1527(f)(ii) (factors apply to opinions of state agency consultants); 20 C.F.R. § 404.1527(f)(iii) (same as to medical experts' opinions); Social Security Ruling 96-6p, 1996 WL 374180 at *2 (S.S.A. July 2, 1996) (same).

13

C.    <u>Analysis</u>

Because virtually all examples of error claimed by Plaintiff in this matter implicate the ALJ's handling of medical evidence from Plaintiff's treating physicians (*see* Docs. ##6, 10), the Court first will consider Plaintiff's argument that the ALJ erred by failing to consider her treating physicians' opinions in accordance with applicable regulations.

Under the "Analysis" heading within his decision, the ALJ accurately described the treating source rule (although not calling it by that name). (*See* Tr. 36). He also correctly enumerated the criteria to be considered "when evaluating the severity of a mental impairment." (Tr. 37). He then declined to find that Plaintiff's reported cognitive dysfunction constituted a severe impairment, finding the "minimal" objective evidence to be insufficient "to document an objective medical basis for significant cognitive dysfunction which would affect her ability to work." (*Id.*).

Seeming to attach great significance to Dr. Reynolds' statement that the scope of Plaintiff's symptoms was "not consistent with the degree of the affective condition present" (*see* Tr. 791), the ALJ surmised that such statement "suggest[s] malingering or exaggeration of symptoms" by Plaintiff. (Tr. 39). He explicitly rejected Dr. Reynolds' "pessimistic opinion" as based "on subjective factors, not clinical evidence." (Tr. 39).

In so doing, the ALJ erred. When psychiatric impairments are at issue, the Sixth Circuit has instructed:

> [A] psychiatric impairment is not as readily amenable to substantiation by objective laboratory testing as a medical impairment . . . [C]onsequently, the diagnostic techniques

14

> employed in the field of psychiatry may be somewhat less
> tangible than those in the field of medicine . . . In general,
> mental disorders cannot be ascertained and verified as are
> most physical illnesses, for the mind cannot be probed by
> mechanical devices . . . in order to obtain objective clinical
> manifestations of mental illness . . .[W]hen mental illness is
> the basis of a disability claim, clinical and laboratory data
> may consist of the diagnosis and observations of professionals
> trained in the field of psychopathology. The report of a
> psychiatrist should not be rejected simply because of the
> relative imprecision of the psychiatric methodology or the
> absence of substantial documentation, unless there are other
> reasons to question the diagnostic techniques.

*Blankenship v. Bowen*, 874 F.2d 1116, 1121 (6th Cir. 1989) (quoting *Poulin v. Bowen*, 817 F.2d 865, 873-74 (D.C. Cir. 1987)) (other citation omitted).

Consistent with the Circuit's directive, Dr. Reynolds' opinion <u>was</u> premised on his diagnoses, as well as on his personal observations. (*See* Tr. 789-91). For example, Dr. Reynolds commented on Plaintiff's "difficulties in expressing herself verbally," noting that he had "asked her to put a number of her complaints in written form" to compensate for her verbal deficiency. (Tr. 790). Moreover, contrary to the ALJ's inference, Dr. Reynolds did <u>not</u> suggest that Plaintiff was guilty of malingering or exaggerating her symptoms – rather, his observation that her "significant cognitive complaints" and other symptoms could <u>not</u> be attributed to her "affective condition" (Tr. 791) more reasonably can be interpreted as his acknowledgment that Plaintiff suffers from a cognitive condition <u>in</u> <u>addition</u> <u>to</u> her mood disorder.

Such interpretation is consistent with Dr. Reynolds' diagnoses of both "Organic Mood Disorder" and "Cognitive Disorder" (Tr. 790), and with his opinion that Plaintiff is

disabled. (*Id.*). In construing Dr. Reynolds' statement otherwise, the ALJ himself explicitly recognized that his interpretation of Dr. Reynolds' statement would be inconsistent with Dr. Reynolds' finding of disability. (*See* Tr. 39). That inherent conflict alone should have alerted the ALJ that his interpretation of Dr. Reynolds' opinion was not supported by substantial evidence. Moreover, Dr. Reynolds' actual intent in stating that Plaintiff's symptoms "are not consistent with the degree of the affective condition present" also is bourne out by Dr. Reynolds' letter of April 6, 2007, included in the administrative record, in which he specified as follows:

> . . . As . . . clearly delineated in my October 2002 communication, Ms. Srode initially experienced symptoms of fatigue and cognitive dysfunction. These symptoms quickly progressed[,] interfering with Ms. Srode's ability to function.
>
> These symptoms were distinct and separate from her mood disorder. The fatigue and cognitive dysfunction pre-dated the development of depressive symptoms and, as previously stated, significantly exceeded the severity expected from her mood disorder alone . . .
>
> . . . As I have previously stated, Ms. Srode was originally disabled as a result of the cognitive disorder[,] not her mood disorder. His disability was subsequently exacerbated by the development of the mood disorder.
>
> * * *
>
> . . . I have always found Ms. Srode to be a reliable historian and in no way believe her to be malingering . . .

(Tr. 943).

Dr. Reynolds' 2007 letter, clarifying his earlier opinion, was not before the ALJ

16

when he issued his decision in 2005, but apparently was accepted as part of the administrative record at some later date. In *Uforma/Shelby Bus. Forms v. Nat'l Labor Relations Bd.*, 111 F.3d 1284, 1292-93 (6th Cir. 1997), the Court held that remand was required despite the existence of substantial evidence to support the ALJ's decision, where the ALJ might have reached a different decision had he not misconstrued certain evidence. *But see Skukan v. Consolidation Coal Co.*, 993 F.2d 1228, 1233 (6th Cir. 1993) (finding an award of benefits rather than remand appropriate). As the record now before this Court makes clear that the ALJ <u>did</u> misconstrue Dr. Reynolds' statements offered in May 2004, we must consider whether reversal or remand is the appropriate remedy for that error.

### D. Remand under Sentence 4

If the Commissioner's final decision fails to apply the correct legal standards or is not supported by substantial evidence, the Court must decide whether to reverse and remand the matter for rehearing or to reverse and order an award of benefits. Under Sentence 4 of 42 U.S.C. § 405(g), the Court has authority to affirm, modify, or reverse the Commissioner's decision "with or without remanding the cause for rehearing." *Melkonyan v. Sullivan*, 501 U.S. 89, 99 (1991). Remand is appropriate if the Commissioner applied an erroneous principle of law, failed to consider certain evidence, failed to consider the combined effect of impairments, or failed to make a credibility finding. *Faucher v. Sec'y of Health & Human Servs.*, 17 F.3d 171, 176 (6th Cir. 1994).

An Order remanding for payment of DIB is warranted only "where proof of the

disability is overwhelming or where the proof of disability is strong and evidence to the contrary is lacking." *Faucher*, 17 F.3d at 176. Although the administrative record contains some evidence to support the conclusion that Plaintiff is under a "disability" within the meaning of the Social Security Act, the administrative record does not contain either overwhelming evidence of a disability or strong evidence of a disability with an absence of contrary evidence. A judicial award of benefits therefore is unwarranted. *See id*.

Remanding this case to allow the ALJ to reassess all evidence relating to Plaintiff's cognitive dysfunction is warranted due to the ALJ's apparent error in construing the intent of Dr. Reynolds's opinion. Because the record demonstrates that remand is appropriate based upon the ALJ's errors in evaluating Dr. Reynolds' opinion, further analysis of Plaintiff's remaining claimed errors is unnecessary. *See Bowen*, 478 F.3d at 746. The ALJ nonetheless is encouraged to reevaluate the treating physicians' opinions not only for controlling weight pursuant to the treating physician rule, 20 C.F.R. § 404.1527(d)(2), *Wilson*, 378 F.3d at 544, but also subject to the additional "deferential weight" factors delineated at 20 C.F.R. § 404.1527(d)(2)-(6) and Social Security Ruling 96-2p. Accordingly, on remand, the Commissioner and the ALJ should be directed (1) to re-evaluate the medical source opinions as required by the Commissioner's Regulations and Rulings; (2) to reassess Plaintiff's residual functional capacity; and (3) to conduct the sequential analysis in light of the weight given to the medical sources on remand, and Plaintiff's reassessed residual functional capacity.

Accordingly, the case must be remanded to the Commissioner and the ALJ under Sentence 4 of 42 U.S.C. § 405(g) for further proceedings consistent with this Report and Recommendations.

### IT IS THEREFORE RECOMMENDED THAT:

1. The Commissioner's non-disability finding be vacated;

2. No finding be made as to whether Plaintiff Bobbie J. Srode was under a "disability" within the meaning of the Social Security Act;

3. This case be remanded to the Commissioner and the Administrative Law Judge under Sentence 4 of 42 U.S.C. § 405(g) for further consideration consistent with this Report; and

4. The case be terminated on the docket of this Court.


September 5, 2008

                                                    s/Sharon L. Ovington
                                                    Sharon L. Ovington
                                       United States Magistrate Judge

## NOTICE REGARDING OBJECTIONS

Pursuant to Fed. R. Civ. P. 72(b), any party may serve and file specific, written objections to the proposed findings and recommendations within ten (10) days after being served with this Report and Recommendations.  Pursuant to Fed. R. Civ. P. 6(e), this period is extended to thirteen (13) days (excluding intervening Saturdays, Sundays, and legal holidays) because this Report is being served by mail.  Such objections shall specify the portions of the Report objected to and shall be accompanied by a memorandum of law in support of the objections.  If the Report and Recommendations are based in whole or in part upon matters occurring of record at an oral hearing, the objecting party shall promptly arrange for the transcription of the record, or such portions of it as all parties may agree upon or the Magistrate Judge deems sufficient, unless the assigned District Judge otherwise directs.  A party may respond to another party's objections within ten (10) days after being served with a copy thereof.

Failure to make objections in accordance with this procedure may forfeit rights on appeal.  *See United States v. Walters*, 638 F. 2d 947 (6th Cir. 1981); *Thomas v. Arn,* 474 U.S. 140 (1985).